**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PINEBROOK MINERALS, LLC** | : | **NO.: 4-11-CV-00177** |
| **Plaintiff** | : | |
| | : | **JUDGE CONNER** |
| **v.** | : | |
| | : | **MAGISTRATE JUDGE METHVIN** |
| **ANADARKO E & P COMPANY, LP** | : | |
| **a/k/a ANADARKO PETROLEUM** | : | |
| **CORPORATION, a/k/a** | : | |
| **ANADARKA PETROLEUM** | : | |
| **CORPORATION** | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**
**(Doc. 8)**

In this diversity action, Pinebrook Minerals, L.L.C. seeks a declaratory judgment that an oil and gas lease held by defendant Anadarko is null and void. Pinebrook recently became the successor in interest to the oil and gas rights on the property in question, subject to the lease. Before the court is defendant's motion to dismiss.[1] The motion has been referred to the undersigned magistrate judge for a report and recommendation[2] and

---

[1] Doc. 8.

[2] On May 9, 2011, Judge Conner referred the motion to the undersigned magistrate judge. (Doc. 20.) The Court has jurisdiction based on diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332.

is now ripe for adjudication.[3] For the following reasons, it is recommended that the

motion be GRANTED.

## FINDINGS AND RECOMMENDATIONS

### I. Background

The facts as recounted here are taken primarily from the complaint and attached

exhibits. Allegations in the complaint are assumed to be true. The facts are detailed only

as necessary for disposition of the pending motion.

Plaintiff Pinebrook is a Pennsylvania limited liability company that primarily conducts

business in this state.[4] Defendant Anadarko is a Texas corporation licensed to do business

in Pennsylvania.[5] Kenmar Hunting Club is a non-profit Pennsylvania corporation.[6]

Before January 30, 2006, Kenmar held exclusive rights to oil and gas on the 560-acre

property it owned in Cogan House Township.[7] On this date, Kenmar leased the oil and

---

[3] Plaintiff initiated this suit on January 26, 2011, with the filing of its complaint. (Doc. 1.)
On March 14, 2011, defendant filed a motion to dismiss (Doc. 8) under Federal Rule of
Civil Procedure 12(b)(6) and a brief in support (Doc. 9) On March 28, plaintiff filed a
brief in opposition (Doc. 12) and supporting exhibits (Doc. 12-1), to which defendant
filed a reply brief (Doc. 19) on April 6.

[4] Compl. ¶ 1, Doc. 1.

[5] *Id.* ¶ 2.

[6] Articles of Incorporation, Kenmar Hunting Club, Oct. 9, 2002, Doc. 12-1, at 2.

[7] Def.'s Br. in Supp. of Mot. to Dismiss 2, Doc. 9, at 6. The Court refers to defendant's
brief because this brief actually makes the facts clearer than does the complaint itself,
which is drafted mostly in dense legalese.

3

gas rights to Jim Bourbeau Land Service, LLC for a five-year term, "and as long thereafter as (1) drilling operations continue with due diligence."[8] The lease provided for royalties to be paid to Kenmar at the rate of 1/8 "the market value at the well," (i.e. free of production costs).[9] An order for payment dated a few days later stated that Bourbeau was to pay Kenmar $14,000 for the lease.[10] Both documents were signed by David K. Perthold, Kenmar's secretary, and Marvin Hamstra, Kenmar's treasurer. Hamstra's signature on the lease is notarized. The Order for Payment also contained the signature of Gary Ford, denoted as "Land Agent," presumably for Bourbeau.[11]

Some time later, Bourbeau assigned its exploration and production rights under the lease to Anadarko.[12] On June 17, 2010, Kenmar assigned its own interests in the lease – as lessor and royalty recipient – to Pinebrook.[13] Finally, on October 20, 2010, Kenmar

---

[8] Compl. ¶ 6, Doc. 1; Oil and Gas Lease, Kenmar Hunting Club–Jim Bourbeau Land Service LLC (hereinafter "Oil and Gas Lease"), Jan. 30, 2006, Doc. 26-2, at 5.

[9] Oil and Gas Lease, Doc. 26-2, at 5.

[10] Order for Payment (Feb. 2, 2006), Doc. 26-2, at 9. Hamstra signed the document on February 2, 2006, and Perthold signed it on February 7, 2006.

[11] *Id.*

[12] Compl. ¶ 7, Doc. 1. The date of this document is unknown.

[13] Assignment of Oil and Gas Lease, June 17, 2010, Doc. 26-2, at 10-13. Although not raised by the parties, it is noted that although the assignment states that Anadarko, the lessee, was a party to the assignment and consented to it, no one for Anadarko signed the document, nor was there a signature line for Anadarko. Furthermore, the assignment was signed by one Arthur MacDonald for both Kenmar and Pinebrook; his title or capacity is not stated.

4

executed a Mineral Deed in favor of Pinebrook, conveying all the mineral rights on the

same 560-acre property "subject to any rights now existing to any lessee or assigns under

any valid and subsisting oil and gas lease of record heretofore executed."[14] Gerard T.

Mascellino, identified as "President" executed the deed under seal and before a notary.[15]

Pinebrook filed the instant complaint on January 26, 2011. Plaintiff seeks a

declaratory judgment that the 2006 oil and gas lease to Bourbeau (now assigned to

Anadarko) was void *ab initio* on grounds that Kenmar's secretary and treasurer had no

authority to sign the lease under Kenmar's by-laws.

## II. Issues Presented

Defendant seeks dismissal based on the following grounds:

A.   The applicable statute of limitations has run, making plaintiff's claim untimely.

B.   Plaintiff has failed to state a claim that Kenmar's officers acted *ultra vires* in executing the 2006 lease.

C.   Plaintiff ratified the 2006 lease.

D.   Kenmar is a necessary party under Fed. R. Civ. P. 19(a)(1), requiring Kenmar to be joined as a plaintiff in this action before judgment may be rendered.

---

[14] Mineral Deed, Kenmark Hunting Club–Pinebrook Minerals, LLC, Doc. 26-2, at 1. Anadarko characterized the mineral deed as assigning the same rights that were leased to Anadarko. Def.'s Br. in Supp. of Mot. to Dismiss 3, Doc. 9, at 7.

[15] Mineral Deed, Doc. 26-2, at 1, 3.

5

### III. Standard of review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of the plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322–23 (2011) (applying the Rule 12(b)(6) standard).

The complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must do more than present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *a plaintiff's obligation to provide*

*the "grounds" of his "entitle*[*ment*] *to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.* Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . .

*Twombly*, 550 U.S. at 555 (alteration in original) (emphasis added) (citations omitted). Plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.* at 570. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (reviewing *Twombly*).

A plaintiff "armed with nothing more than conclusions" is not entitled to discovery. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd on other grounds*, 129 S. Ct. at 1937).

7

The Third Circuit has outlined a two-part analysis that courts should use when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1950) (internal quotation marks omitted). That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. *Id.* at 211.

## IV. Discussion

### (A) Statute of Limitations

A federal court applies the substantive law of its forum state in diversity actions, including statutes of limitations. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Statutes of limitations "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial has been prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971). The limitations period begin to run "as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

8

Defendant contends that the mineral lease is governed by the four-year limitations period applicable to contracts in Pennsylvania, citing 42 Pa. Con. Stat. Ann. §5525. By defendant's argument, this four-year period expired almost a year before plaintiff filed its complaint (on January 26, 2011) because the action accrued on January 30, 2006, when the lease in question was executed. In support of this proposition, defendant cites *McGaffic v. City of New Castle*, 973 A.2d 1047, 1052 (Pa. Commw. 2009). *McGaffic* is not apposite, however, as it merely repeated the well-established principle that a breach-of-contract claim accrues on the date of the breach. *Id.* In the present case, plaintiff's claim is not that the January 30, 2006, lease was breached, but that it was void *ab initio*.

Plaintiff contends that § 5525 does not apply because a mineral lease conveys real property interests, and is not merely a contract for goods or services. Alternatively, plaintiff argues that even if the four-year statute of limitations applies, the statute was tolled because plaintiff did not discover the defect until the assignment of the lease on June 17, 2010, which makes the filing timely.

Section 5525 generally provides the limitations period for oral and written contracts, judgments, and bonds. Although subsection (a)(1) of the statute refers only to contracts "for the sale . . . of tangible *personal property or fixtures*," subsection (a)(8) provides a catchall provision governing contracts not subject to another limitation period.[16]

---

[16] The statute provides:

**§ 5525. Four year limitation**

9

As discussed below, plaintiff's contention that the 2006 Kenmar–Bourbeau lease is

---

    (a) General rule. Except as provided for in subsection (b), the following actions and proceedings must be commenced within four years:

        (1) An action upon a contract, under seal or otherwise, for the sale, construction or furnishing of tangible personal property or fixtures.

        (2) Any action subject to 13 Pa.C.S. § 2725 (relating to statute of limitations in contracts for sale).

        (3) An action upon an express contract not founded upon an instrument in writing.

        (4) An action upon a contract implied in law, except an action subject to another limitation specified in this subchapter.

        (5) An action upon a judgment or decree of any court of the United States or of any state.

        (6) An action upon any official bond of a public official, officer or employee.

        (7) An action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. Where such an instrument is payable upon demand, the time within which an action on it must be commenced shall be computed from the later of either demand or any payment of principal of or interest on the instrument.

        (8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

    (b) Special provisions. An action subject to section 8315 (relating to damages in actions for identity theft) must be commenced within four years of the date of the offense or four years from the date of the discovery of the identity theft by the plaintiff.

42 Pa. Con. Stat. Ann. §5525.

not governed by contract law is incorrect. Accordingly, the four-year limitations period

for contracts applies here under § 5525. However, the facts show that plaintiff had no

interest in or rights affected by the lease until Kenmar's assignment on June 17, 2010.

Under the "discovery rule," the limitations period begins to run for a claim only when

"the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that

his injury has been caused by another party's conduct." *Romah v. Hygienic Sanitation

Co.,* 705 A.2d 841, 857–58 (Pa. Super. 1997) (quoting *Redenz ex rel. Redenz v.

Rosenberg*, 520 A.2d 883, 885 (Pa. Super. 1987). Accordingly, the complaint filed in

January 2011 is well within the four-year limitations period.

> **(B)** **Has plaintiff stated a claim that Kenmar's officers acted ultra vires in executing the lease?**

Defendant argues that plaintiff has failed to state a claim under Pennsylvania law for

voiding the 2006 mineral lease. As noted above, two corporate officers signed the mineral

lease in 2006, David K. Perthold, Kenmar's secretary, and Marvin Hamstra, Kenmar's

treasurer.[17] Plaintiff makes no allegation that Perthold and Hamstra were not in fact

officers of Kenmar on the date in question. The relevant allegations in the complaint *in

toto* are as follows:

> 8.     The Plaintiff avers that said Oil and Gas Lease, Exhibit "B" herein, is
>        and was null and void, ab initio, for reasons set herein as follows:

---

[17] Oil and Gas Lease, Doc. 26-2, at 5, 8; Order for Payment, Doc. 26-2, at 9.

11

a) The Secretary and Treasurer of Kenmar executed the Lease by their own signatures and Corporate titles, but without any authorization by the Corporate membership which would allow these two individuals to execute any Leases; or

b) The Kenmar Corporate By-Laws specifically state that neither of the two individuals signors (sic) with their respective corporate offices; had any authority to bind the Corporation in executing a Lease, nor was there a Corporate amendment to the By-Laws authorizing these two individuals, as Secretary and Treasurer, to bind the Corporation; or

c) No meeting wherein this authority was granted, was held or was called, nor was any Corporate resolution voted upon to approve the same; or

d) The transfer of Oil and Gas Lease rights under this Lease, (Exhibit "B"), constituted a conveyance of a significant portion of the Corporate assets and/or land, and before the authorization to enter into this Lease can be given, requires the Non Profit Corporate Membership to approve same, which was never done; or

e) The acknowledgment on the Lease itself is defective as the signature of only one of the parties who signed the Lease was acknowledged.[18]

As is clear from reading the complaint, plaintiff alleges only that the Secretary and Treasurer lacked *actual authority* to bind the corporation. These allegations are based upon the internal regulations and by-laws of Kenmar concerning what constituted "corporate authorization" at the time of the lease.

---

[18] Complaint, Doc. 1, at 2-3.

12

Defendant points out that under Pennsylvania's Nonprofit Corporation Law,[19] a corporation is bound by a contract when it is "signed by one or more officers or agents having *actual or apparent authority* to sign it," regardless of limitations expressed in the corporation's articles or bylaws.[20]

Plaintiff responds that § 5506 does not apply to conveyances of real property interests such as a mineral lease.

Determining if plaintiff has stated a claim for relief comprises two subordinate questions: whether § 5506 applies and, if it does, whether plaintiff has otherwise stated a plausible claim that Kenmar's officers lacked actual or apparent authority to sign the lease.

---

[19] There is no dispute that Kenmar is a nonprofit corporation and therefore subject to the Nonprofit Corporation Law.

[20] Title 15 Pa. Cons. Stat. Ann. § 5506(a) provides:

> **(a) General rule.**--Any form of execution provided in the articles or bylaws to the contrary notwithstanding, any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between any nonprofit corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice-president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation.

**(1) Applicability of § 5506**

There is no dispute that Kenmar is a nonprofit corporation subject to Pennsylvania's

Nonprofit Corporation Law of 1988.[21] Plaintiff contends, however, that § 5506 of the

Code does not apply because, under Pennsylvania law, a mineral lease is not a contract,

but a transfer of a property interest requiring a deed or other conveyance of property.

Plaintiff's arguments are unsupported. First, under Pennsylvania law, a mineral lease

is a contract that conveys property rights, and accordingly, both contract and property law

apply. *Hite v. Falcon Partners*, 13 A.3d 942, 945 (Pa. Super. 2011) (citing *Jacobs v. CNG

Transmission Corp.*, 332 F. Supp. 2d 759, 772 (W.D. Pa. 2004)). Contract law controls

whether the instrument purporting to convey property rights does so validly; property law

controls what happens to a right conveyed by a valid instrument. Explicit references to

leases as contracts in Pennsylvania law date at least as far back as 1886 and continue to

the present. *Ford v. Buchanan*, 2 A. 339, 340 (Pa. 1886) (adjudicating a dispute relating

to an oil and gas lease); *Firetree, Ltd. v. Dep't of Gen. Servs.*, 978 A.2d 1067, 1073 (Pa.

Commw. 2009) (construing Pennsylvania's 1772 Statute of Frauds in the context of a

"contract for the lease of property")). The Pennsylvania legislature enacted § 5506 in

---

[21] 15 Pa. Cons. Stat. Ann. § 5501 *et seq.* Kenmar's articles of incorporation state that it is a nonprofit whose corporate purposes are: "(1) To provide protection for wild game and to promote recreational hunting of wild game through the use of property owned by the Corporation" and "(2) To do and perform any and all things and acts necessary or appropriate to accomplish the foregoing."  Articles of Incorporation, Kenmar Hunting Club, Oct. 9, 2002, Doc. 12-1, at 2.

14

1972 and updated it in 2001; it was surely aware of the treatment of leases as contracts

when it chose the wording for § 5506, and if the goal was to except mineral leases from

the scope of § 5506, the legislature could have done so explicitly. As it is, § 5506 is

written in broad, sweeping terms: it applies to "any note, mortgage, evidence of

indebtedness, contract or other document." *Id.* § 5506(a). There is no basis to read leases

out of the statute when its wording indicates expansive intent.

Secondly, even if plaintiff were correct, a separate provision of the Nonprofit

Corporation Law addresses conveyances of real estate in a similar fashion. Title 15 Pa.

Cons. Stat. Ann. §5503(b) provides:

> **(b) Conveyances of property by or to a corporation**.-- A conveyance
> or transfer by or to a nonprofit corporation of property, real or personal,
> of any kind or description, shall not be invalid or fail because in making
> the conveyance or transfer, or in acquiring the property, real or personal,
> any representative of the corporation acting within the scope of the actual
> or apparent authority given to him by the corporation has exceeded any
> of the purposes or powers of the corporation.

Under either of these provisions – one governing contracts and the other governing

real estate transactions – the sole inquiry is whether the corporate representative was

acting with actual or apparent authority. The law is also clear under both of these

provisions that the corporation's by-laws, "purposes or powers" are not relevant to this

determination.[22]

---

[22]  Title 15 Pa. Cons. Stat. Ann. §5503(b).

15

Finally, even if violation of Kenmar's by-laws could serve as the basis of plaintiff's claim, plaintiff lacks standing to make this argument. An additional provision of the Pa. Nonprofit Corporation Law states:

> **§ 5505. Persons bound by bylaws**
> Except as otherwise provided by section 5713 (relating to personal liability of directors) or any similar provision of law, bylaws of a nonprofit corporation shall operate only as regulations among the members, directors, members of an other body and officers of the corporation, *and shall not affect contracts or other dealings with other persons, unless those persons have actual knowledge of the bylaws.*

15 Pa. C.S.A. §5505 (emphasis supplied).[23]

For the foregoing reasons, plaintiff cannot rely upon Kenmar's by-laws, corporate policies or regulations as a basis to challenge the lease. The sole inquiry is whether plaintiff has otherwise stated a claim that the corporate representatives were acting without actual or apparent authority.

## (2) Actual or apparent authority

As noted above, plaintiff's complaint alleges only an absence of *actual* authority, not *apparent* authority. Furthermore, even if read more broadly, plaintiff's claims are based solely upon Kenmar's by-laws and corporate policies, which is prohibited under Pennsylvania law.[24]

---

[23] *See* Defendant's Reply Brief, Doc. 19, at 5.

[24] Defendant further contends that even if plaintiff had standing, and even if the bylaws affected contracts with third parties, Kenmar's bylaws do not limit the authority of the secretary and treasurer to sign contracts for Kenmar. *See* By-Laws of the Kenmar Hunting Club, Doc. 12-1, at 4, 10. This argument need not be addressed in light of the conclusions

16

An agent may obtain the power to act on a principal's behalf if the principal grants the agent either actual or apparent authority. Actual, express authority "exists where the principal directly states that an agent has the authority to perform a particular act on the principal's behalf." *Jones v. Van Norman*, 522 A.2d 503, 511 (Pa. 1987) (citing *Hartley v. Robena Local Union No. 6321*, 113 A.2d 239 (Pa. 1955)). An agent has apparent authority to bind the principal when the principal has not actually granted that power, but "leads persons with whom his agent deals to believe that he has." *Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 410 (Pa. 1968).

While plaintiff contends that Perthold and Hamstra lacked authority to bind Kenmar in the 2006 lease, plaintiff alleges no facts to support these allegations other than Kenmar's own by-laws. When facing a Rule 12(b)(6) motion, a plaintiff must do more than present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)). Plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.* at 570. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (reviewing *Twombly*).

Considering the foregoing, it is recommended that the motion to dismiss be GRANTED.

---

regarding relevance of the by-laws.

### (C) Ratification

Defendant alternatively seeks dismissal on grounds that Kenmar ratified the lease. This issue need not be reached if the Court concurs with the recommendation above. It is addressed for the sake of completeness.

Defendant argues that Kenmar ratified the 2006 lease: (1) by accepting $14,000 from Bourbeau in consideration for executing the lease; (2) by failing to repudiate the lease within a reasonable time; and 3) by admitting the validity of the lease in the assignment to Pinebrook in 2010.

A corporation is estopped from arguing that an officer acted ultra vires in executing a contract when the corporation has received and enjoyed benefits of the contract. *Lokay v. Lehigh Valley Coop. Farmers, Inc.*, 492 A.2d 405, 409 (Pa. Super. 1985); *McGuire*, 904 A.2d at 978 (concluding that treatment of a bargain as valid may constitute ratification by passive acquiescence).

"Ratification has generally been defined as the adoption or confirmation of a prior act performed on the principal's behalf by an agent lacking authority to bind the principal." *CNA Ins. Grp. v. Nationwide Mut. Ins. Co.*, Nos. 98-1962, 99-3876, 2000 WL 288241, at *4 (E.D. Pa. Mar. 8, 2000) (citing 12 Richard A. Lord, *Williston on Contracts* § 35:22 (4th ed. 1999)). A principal may ratify an unauthorized act of its agent by either formal action or passive acquiescence. *McGuire Performance Solutions, Inc. v. Massengill*, 904 A.2d 971, 978 (Pa. Super. 2006) (quoting *Collins v. Parkton Compound Boiler Co.*, 171

18

A.2d 576, 579 (Pa. Super. 1961)). In order to ratify an agent's act, a principal "must have

full knowledge of the material facts and circumstances attending the act." *Shields v.

Hitchman*, 96 A. 1039, 1041 (Pa. 1916) (citing *Pittsburgh & S.R. Co. v. Gazzam*, 32 Pa.

340 (1858)).

The documents show that Kenmar was to receive $14,000 from Bourbeau in

consideration of the 2006 mineral lease, and royalties payable at the rate of 1/8 "the

market value at the well."[25] However, there is nothing before the court to establish

whether Kenmar actually received the $14,000 or any royalties from production under the

lease. Plaintiff did not brief this issue. While defendant is currently the lessee with

exploration and production rights, and presumably has information regarding any

royalties paid to Kenmar, nothing was submitted to the court. Without more conclusive

factual information, dismissal on this argument is not supported.

Defendant also argues that when Pinebrook accepted Kenmar's interest in the lease

in the "Assignment of Oil and Gas Lease" in June 2010, Pinebrook admitted by specific

terms of the contract that the 2006 lease to Bourbeau/Anadarko was valid. The

assignment acknowledges that the original lessee, Bourbeau had assigned its rights to

Anadarko.[26] The document also states that by entering into that assignment, Pinebrook

"assume[d] and agree[d] to be bound by all of [Kenmar's] obligations under the [2006

---

[25] Oil and Gas Lease, Doc. 26-2, at 5.

[26] Assignment of Oil and Gas Lease, Kenmar Hunting Club–Pinebrook Minerals,
LLC–Anadarka Petroleum Corporation, Doc. 26-2, at 10.

lease]," and warranted that the 2006 lease "is now in good standing and in full force and effect."[27] Again, plaintiff does not address this issue in its brief.

In support of its argument, defendant cites only Federal Rule of Evidence 803(d)(2). The validity of a contract is a question of law, which it is the court's sole province to answer. Accordingly, the statements in the June 2010 assignment do not constitute binding judicial admissions and do not determine the outcome of this case. *Parlette v. Palumbo*, 68 Pa. D. & C. 374, 378, 1949 WL 3195, at *3 (1949). *See also Chatton v. Nat'l Union Fire Ins. Co.*, 13 Cal. Rptr. 2d 318, 331 (Cal. App. 1992) (evidence that insurer admitted liability was irrelevant in determining liability because liability turned on interpretation of the insurance contract, which was a question of law); *Tritsch v. Ayer Tanning Co.*, 56 N.E.2d 11, 13 (Mass. 1944) (admission in testimony that certain correspondence constituted an entire contract did not bear on the legal question of what the contract was); *DeMars v. Carlstrom*, 948 P.2d 246, 249 (Mont. 1997) ("For a judicial admission to be binding upon a party, the admission must be one of fact rather than a conclusion of law . . . ." (citing *Larson v. A.T.S.I.*, 859 P.2d 273, 275–76 (Colo. App. 1993))).

Accordingly, an order of dismissal is not appropriate on this ground.

### (D) Kenmar as a necessary party

The court need only address this issue if defendant's motion to dismiss is denied.

---

[27] *Id.*

20

Defendant argues that if its motion to dismiss is denied, Kenmar must be joined as a necessary party in this action because Kenmar was the original party to, and received payments under, the 2006 lease. Defendant asserts that Kenmar has a material interest in this matter: "if the court were to unwind the Lease from its inception, then Kenmar would necessarily be forced to return all consideration received under the Lease . . . [and] to the extent that the Lease were to be voided without Kenmar being a party to this case and bound by the decision, defendant Anadarko would face the potential risk of inconsistent determinations if it were forced to pursue the return of this consideration in a separate action."[28]

Plaintiff opposes joinder, suggesting it would destroy diversity, although this would only be true if Kenmar were joined as a defendant. Plaintiff further argues, without elaboration or citation, that the dispute only involves the lease and the parties before the court.[29]

Federal Rule of Civil Procedure 19 governs required joinder of parties. Analysis under Rule 19 is a two-step process: first, "the court must determine if the absent party is 'necessary' under Rule 19(a);" and second, "if the party is 'necessary' and joinder is not feasible, then the court must decide whether the party is 'indispensable' under Rule 19(b)." *Tellett Prebon PLC v. BGC Partners, Inc.*, No. 10-3143, 2011 WL 1831590, at *2

---

[28] Doc. 9, at 12-13.

[29] Doc. 12, at 8.

(3d Cir. May 13, 2011) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)).

It is noted that joinder is "feasible" since Kenmar is a Pennsylvania corporation, and directing its joinder as an involuntary plaintiff would not affect the Court's diversity jurisdiction over the case. As discussed below, Kenmar is aligned with plaintiff.

Rule 19 states in pertinent part:

**Rule 19. Required Joinder of Parties**
  **(a) Persons Required to Be Joined if Feasible.**

    **(1) Required Party.**
    A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

        (A) in that person's absence, the court cannot accord complete relief among existing parties; or

        (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            (i) as a practical matter impair or impede the person's ability to protect the interest; or

            (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

    **(2) Joinder by Court Order.**
    If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff

22

A this juncture, the only relief requested is a declaratory judgment voiding a mineral lease. The parties include both the lessor and mineral fee owner (Pinebrook), and the lessee (Anadarko). It appears that the court could "accord complete relief" among existing parties under Rule 19(a)(1)(A). However, the issue remains whether non-joinder will result in a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" as argued by defendant.

Kenmar obviously has not joined the suit voluntarily, although the record shows that Kenmar is aligned with plaintiff and has made independent efforts to invalidate the lease. On November 10, 2010 (prior to the mineral deed to Pinebrook), an attorney for the same law firm which represents plaintiff in this matter sent a letter to Anadarko on behalf of Kenmar stating that during a "review of all of the corporate records," counsel "noticed that the secretary and treasurer of the club executed the [2006 oil and gas] lease," but that "neither of the two individuals in the corporate office had any authority to bind the corporation."[30] This letter expounds exactly the same claims as the instant suit. It is noted that Kenmar's letter was dated after its lease/royalty assignment in favor of Pinebrook but before execution of the mineral deed. Clearly, at this juncture, Pinebrook was not in a position to so challenge the validity of the 2006 lease, because it was then receiving its

---

[30] Letter from John F. Spall, Esq., Spall, Rydezwski, Anderson, Lalley & Tunis, P.C., to Christopher Martin, Anadarko Petroleum Corp. (Nov. 10, 2010), Doc. 19, at 16–17.

benefits per the assignment. It was only after execution of the mineral deed in its favor that Pinebrook sought to invalidate the lease.

The facts presented confirm the interconnected nature of the dispute. The original lessee, Bourbeau, apparently paid Kenmar $14,000 for the lease.[31] Kenmar may or may not have received royalties under the lease from Bourbeau and/or its assignee, Anadarko. While Kenmar has now deeded all of its oil and gas rights in the 560-acre property to Pinebrook, Kenmar remains the property owner, and recipient of previous benefits of the lease. Furthermore, the mineral deed is "subject to any rights now existing to any lessee . . . under any valid and subsisting oil and gas lease."[32]

Under these circumstances, joinder is both feasible and necessary. Joinder of Kenmar as an involuntary plaintiff would not destroy diversity jurisdiction. Before refusing a feasible joinder in this case, the court must be able to conclude that complete relief could be accorded to the parties in Kenmar's absence. *Amboy Bancorporation  v. Bank Advisory Grp., Inc.*, 2011 WL 1533012, at *8 (3d Cir. 2011) (distinguishing *General Refractories Co. v. First State Insurance Co.*, 500 F.3d 306 (3d Cir.2007) which denied joinder of absent insurers where there was joint and several liability and the court "could grant complete relief to the insured from any insurer that was a party to the action." *Id.)*

---

[31] Order for Payment, Kenmar Hunting Club–Jim Bourbeau Land Service LLC, February 2, 2006, Doc. 26-2, at 9

[32]  Mineral Deed, Kenmark Hunting Club–Pinebrook Minerals, LLC, Doc. 26-2, at 1.

24

Should the court invalidate the lease *ab initio*, there is a substantial risk that Anadarko will incur "double, multiple, or otherwise inconsistent obligations" in pursuing remedies against Kenmar. Accordingly, it is recommended that if dismissal is denied, the court should join Kenmar as an involuntary plaintiff.

## IV. Conclusion

Based on the foregoing discussion, it is recommended that this Court GRANT defendant's motion to dismiss. Alternatively, if dismissal is denied, it is recommended that the court join Kenmar as an involuntary plaintiff.

Signed on July 25, 2011.


_____

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE